# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Michael Appel, Christa Bradley, Colin | ) | |
| Brand, Colin Brand as next friend of | ) | |
| Kathleen Brand a minor, Philip Dorsey, | ) | |
| Brandon Gaines, David Greenhalgh, | ) | |
| Matthew Heinecke, Robyn Hess, Michael | ) | |
| Hess, Peter Malpezzi, Richard Neumann, | ) | |
| Douglas Schaan, Scott Sheldon, William | ) | |
| Whitlow, Wyatt Whitlow, Adam Woodley, | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| LaSalle County State's Attorney Felony | ) | |
| Enforcement Unit, LaSalle County State's | ) | |
| Attorney, Brian Towne, Edward Jauch, | ) | |
| Spring Valley Police Department, Spring | ) | |
| Valley Police Chief Kevin Sangston, | ) | |
| Daniel Gillette, Jeff Gaither, Brian Zebron, | ) | |
| LaSalle Police Department, LaSalle Police | ) | |
| Chief Robert Uranich, Mark Manicki, | ) | |
| Ottawa Police Department, Ottawa Police | ) | |
| Chief Brent Roalson, Derek Benning, Peru | ) | |
| Police Department, Peru Police Chief | ) | |
| Douglas Bernabei, Timothy Green, Robert | ) | |
| Nilles, Matthew Heiden, LaSalle County | ) | |
| Board, City of Spring Valley, Rebecca | ) | |
| Hanson, Jeff Burke, Mark Hoster, and | ) | |
| the Illinois State's Attorney Appellate | ) | |
| Prosecutor, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

PLAINTIFFS, MICHAEL APPEL, CHRISTA BRADLEY, COLIN BRAND, COLIN

BRAND, as next friend of KATHLEEN BRAND, a minor, PHIL DORSEY, BRANDON

GAINES, DAVID GREENHALTH, MATTHEW HEINECKE, ROBYN HESS, MICHAEL HESS, PETER MALPEZZI, RICHARD NEUMANN, DOUGLAS SCHAAN, SCOTT SHELDON, WILLIAM WHITLOW, WYATT WHITLOW, and ADAM WOODLEY, individually and on behalf of all others similarly situated, by and through their undersigned counsel, Daniel Compton and Patrick Flanagan of Compton Law Group, and for their Complaint against Defendants, LaSalle County State's Attorney Felony Enforcement Unit ("SAFE"), LaSalle County State's Attorney, Brian Towne, Edward Jauch, Spring Valley Police Department, Spring Valley Police Chief Kevin Sangston, Daniel Gillette, Jeff Gaither, Brian Zebron, LaSalle Police Department, LaSalle Police Chief Robert Uranich, Mark Manicki, Robert Nilles, Ottawa Police Department, Ottawa Police Chief Brent Roalson, Derek Benning, Peru Police Department, Peru Police Chief Douglas Bernabei, Timothy Green, Matthew Heiden, LaSalle County Board, City of Spring Valley, Rebecca Hanson, Jeff Burke, Mark Hoster, and the Illinois State's Attorney Appellate Prosecutor, allege as follows:

## INTRODUCTION

This is a civil class action for damages arising under 18 U.S.C. 1964 and 1965, 28 U.S.C. 1331, 42 U.S.C. 1983, and 18 U.S.C. 242. The Defendants deprived the Plaintiffs of their civil rights protected by the Constitution of the United States violating 42 U.S.C. 1983 in the following manner:

(a) fraudulently violating 18 U.S.C. Section 242. Acting under the color of law, they exceeded the bounds of their official lawful authority when they fraudulently operated an unofficial police force, stopping interstate motorists on Interstate 80 in Illinois;

(b) violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants' unlawful conduct violated 18 U.S.C. subsections 1962 (a), (b), (c), and (d) when they fraudulently and criminally violated 18 U.S.C. Section 242, acting under the color of law, they exceeded the bounds of their official lawful authority when they fraudulently operated an unofficial police force, stopping interstate motorist on Interstate 80 in Illinois;

(c) The Defendants fraudulently seized and converted the property of the Plaintiffs; and

(d) Defendants fraudulently presented themselves as police officers acting under the color of law.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this class action pursuant to 18 U.S.C. 1964 and 1965, 28 U.S.C. 1331, 42 U.S.C. 1983, and 18 U.S.C. 242.

2.      This court has jurisdiction over this class action for violations of Civil Rights through The Civil Rights Act of 1871, 42 U.S.C. Section 1983, *Monell v. N.Y. Dep't of Social Services*, 436 U.S. 658 (1978), and the Fourth and Fourteenth Amendments to the United States Constitution.

3.      This Court has jurisdiction over this class action for violations of RICO pursuant to 18 U.S.C. 1964 and 28 U.S.C. 1331.

4.      Venue is proper in this judicial district pursuant to 18 U.S.C. Section 1965 and 28 U.S.C. Section 1391.  Defendants are subject to personal jurisdiction in this judicial district because they committed the actions complained of in this judicial district and they reside in this judicial district.

## PARTIES

### Plaintiffs

#### Michael Appel

5.      Plaintiff, Michael Appel, is a resident of Pennsylvania.

6.      On January 15, 2015, Michael Appel was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

7.    Immediately after being stopped for a supposed minor traffic violation, Ottawa Police Department Canine Officer Robert Nilles arrived at the traffic stop and conducted a drug sniff of the car.

8.    After the drug sniff was completed, SAFE Officers Daniel Gillette and Jeff Gaither conducted a search of the car.

9.    SAFE seized $51,400.00 in U.S. currency.

10.    This search violated Michael Appel's Fourth Amendment rights and was an illegal search.

11.    The seizure of the U.S. currency was a violation of Mr. Appel's Fourth and Fourteenth Amendment rights.

12.    The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Appel.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Christa Bradley**

13.    Plaintiff, Christa Bradley, is a resident of Texas.

14.    On October 23, 2012, Christa Bradley was a passenger in a car driving eastbound on Interstate 80 in LaSalle County, Illinois when she was stopped by SAFE, an unlawful police force acting under the color of law.

15.    Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Mark Manicki arrived at the traffic stop and conducted a drug sniff of the car.

16.     The canine free air sniff was negative.

17.     Despite the negative results of the canine free air sniff, SAFE Officers Gillette and Gaither thought they smelled cannabis even though the trained drug-sniffing dog did not.

18.     After the negative drug sniff was completed, SAFE Officers Gillette and Gaither conducted a search of the vehicle based upon their ability to perform a more thorough sniff than a trained canine dog.

19.     This search violated Christa Bradley's Fourth Amendment rights and was an illegal search.

20.     Christa Bradley plead guilty to the drug charges for the drugs seized during this illegal stop when the LaSalle County States Attorney fraudulently represented to Christa Bradley and the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the State's Attorney would present during a trial.

21.     As a result of the fraudulently induced guilty plea and fraudulent representations to the Court, Christa Bradley was sentenced to four years in the Illinois Department of Corrections and fined $25,560.00

22.     Christa Bradley's fraudulently induced guilty plea and subsequent conviction and imprisonment resulted in violations of her Fifth and Eighth Amendment rights.

23.     The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop the vehicle in which Ms. Bradley was a passenger.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Colin Brand and**
**Colin Brand, as next friend of Kathleen Brand, a minor**

24.     Plaintiffs, Colin Brand and Kathleen Brand, are residents of the State of California.

25.     On December 17, 2013, Kathleen Brand was a passenger in a vehicle being driven by Colin Brand proceeding westbound on Interstate 80 in LaSalle County, Illinois when they were stopped by SAFE, an unlawful police force acting under the color of law.

26.     Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Brian Zebron arrived at the traffic stop and conducted a drug sniff of the car.

27.     After the drug sniff was completed, SAFE Officers Gillette and Gaither conducted a search of the car.

28.     SAFE seized $5,379.00 in U.S. currency.

29.     This search violated Colin Brand and Kathleen Brands' Fourth Amendment rights and was an illegal search.

30.     The seizure of the U.S. currency was a violation of Colin Brand and Kathleen Brands' Fourth and Fourteenth Amendment rights.

31.     The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or rights to stop the Brands.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Philip Dorsey**

32.     Plaintiff, Philip Dorsey, is a resident of Oregon.

33.    On January 15, 2013, Philip Dorsey was driving eastbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

34.    Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Mark Manicki arrived at the traffic stop and conducted a drug sniff of the car.

35.    After the drug sniff was completed, SAFE Officer Daniel Gillette conducted a search of the car.

36.    SAFE seized $2,000.00 in U.S. currency.

37.    This search violated Philip Dorsey's Fourth Amendment rights and was an illegal search.

38.    The seizure of the U.S. currency was a violation of Philip Dorsey's Fourth and Fourteenth Amendment rights.

39.    Philip Dorsey plead guilty to drug charges for the drugs seized during this illegal stop when the LaSalle County States Attorney fraudulently represented to Philip Dorsey and the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the State's Attorney would present during a trial.

40.    As a result of the fraudulently induced guilty plea and fraudulent representations to the Court, Philip Dorsey was sentenced to four years in the Illinois Department of Corrections and fined $13,290.00.

41.    Philip Dorsey's fraudulently induced guilty plea and subsequent conviction and imprisonment resulted in violations of his Fifth and Eighth Amendment rights.

42.     The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Dorsey.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Brandon Gaines**

43.     Plaintiff, Brandon Gaines, is a resident of Ohio.

44.     On February 7, 2012, Brandon Gaines was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

45.     Immediately after being stopped for a supposed minor traffic violation, Spring Valley Police Department Canine Officer Timothy Greene arrived at the traffic stop and conducted a drug sniff of the car.

46.     After the drug sniff was completed, SAFE Officer Jeff Gaither conducted a search of the car.

47.     SAFE seized $5,000.00 in U.S. currency.

48.     This search violated Brandon Gaines' Fourth Amendment rights and was an illegal search.

49.     The seizure of the U.S. currency was a violation of Brandon Gaines' Fourth and Fourteenth Amendment rights.

50.     The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Gaines.  The search and seizure was part of the Defendants' conspiracy to

seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**<u>David Greenhalgh</u>**

51.     Plaintiff, David Greenhalgh, is a resident of Maine

52.     On January 31, 2012, David Greenhalgh was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

53.     Immediately after being stopped for a supposed minor traffic violation, Peru Police Department Canine Officer Matthew Heiden arrived at the traffic stop and conducted a drug sniff of the car.

54.     After the drug sniff was completed, SAFE Officers conducted a search of the car.

55.     This search violated David Greenhalgh's Fourth Amendment rights and was an illegal search.

56.     David Greenhalgh plead guilty to drug charges for the drugs seized during this illegal stop when the LaSalle County State's Attorney fraudulently represented to David Greenhalgh and the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the State's Attorney would present during a trial.

57.     As a result of the fraudulently induced guilty plea and fraudulent representations to the Court, David Greenhalgh was sentenced to three years in the Illinois Department of Corrections and fined $15,000.00

58.     David Greenhalgh's fraudulently induced guilty plea and subsequent conviction fines and imprisonment resulted in violations of his Fifth and Eighth Amendment rights.

59.     The search was conducted as part of the Defendants' unlawful violations of RICO

by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Greenhalgh. The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Matthew Heinecke**

60.     Plaintiff, Matthew Heinecke, is a resident of Massachusetts.

61.     On or about January 20, 2015, SAFE Officers travelled to Massachusetts with cannabis and U.S. Currency that SAFE seized as part of a traffic stop on Interstate 80 in LaSalle County.

62.     On information and belief, SAFE Officers fraudulently represented to Massachusetts law enforcement agencies and courts that they had seized evidence during a lawful traffic stop and traced it to a home in Massachusetts.

63.     Mr. Heinecke was a visitor at the house in Massachusetts where SAFE Officers said the illegal drugs and currency were to be delivered.

64.     Massachusetts law enforcement conducted a search of the home and arrested Mr. Heinecke.

65.     That the search of the home was the result of fraudulently represented evidence from SAFE and resulted in the arrest of Mr. Heinecke.

66.     Mr. Heinecke also plead guilty based upon evidence that was fraudulently seized in violation of the Fourth and Fourteenth Amendments.

67.     Mr. Heinecke's fraudulently induced guilty plea and subsequent conviction and imprisonment resulted in violations of his Fifth and Eighth Amendment rights.

68.     The Search and Seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction

or right to conduct a search of the premises in which Mr. H was located. The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Robyn Hess and**
**Michael Hess**

69.     Plaintiffs, Robyn Hess and Michael Hess, are residents of New Jersey.

70.     On January 14, 2015, Robyn Hess was driving eastbound on Interstate 80 in LaSalle County, Illinois when she was stopped by SAFE, an unlawful police force acting under the color of law.

71.     Immediately after being stopped for a supposed minor traffic violation, Ottawa Police Department Canine Officer Robert Nilles arrived at the traffic stop and conducted a drug sniff of the car.

72.     After the drug sniff was completed, SAFE Officers Mark Hoster and Jeff Gaither conducted a search of the car.

73.     This search violated Robyn and Michael Hess' Fourth Amendment rights and was an illegal search.

74.     Robyn Hess was charged with possession of illegal drugs and fined $10,000.00, and she was forced to pay bond in order not to be held in the County jail. The LaSalle County State's Attorney fraudulently represented to the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the State's Attorney would present during a trial.

75.     Robyn Hess' fine resulted in violations of her Fifth and Eighth Amendment rights.

76.     The search and seizure was conducted as part of the Defendants' unlawful

violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Robyn Hess and Michael Hess. The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Peter Malpezzi**

77.     Plaintiff, Peter Malpezzi, is a resident of California.

78.     On February 18, 2014, Mr. Malpezzi was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

79.     Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Brian Zebron arrived at the traffic stop and conducted a drug sniff of the car.

80.     After the drug sniff was completed, SAFE Officers Daniel Gillette and Jeff Gaither conducted a search of the car.

81.     SAFE seized $40,720.00 in U.S. currency.

82.     This search violated Peter Malpezzi's Fourth Amendment rights and was an illegal search.

83.     The seizure of the U.S. currency was a violation of Mr. Malpezzi's Fourth and Fourteenth Amendment rights.

84.     The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Malpezzi. The search and seizure was part of the Defendants' conspiracy to

seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Richard Neumann**

85.     Plaintiff, Richard Neumann, is a resident of Oregon.

86.     On December 11, 2014, Richard Neumann was driving east bound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

87.     Immediately after being stopped for a supposed minor traffic violation, Ottawa Police Department Canine Officer Robert Nilles arrived at the traffic stop and conducted a drug sniff of the car.

88.     After the drug sniff was completed, SAFE Officers Daniel Gillette and Mark Hoster conducted a search of the car.

89.     This search violated Richard Neumann's Fourth Amendment rights and was an illegal search.

90.     Richard Neumann plead guilty to drug charges for the drugs seized during this illegal stop when the LaSalle County State's Attorney fraudulently represented to Richard Neumann and the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the States Attorney would present during a trial.

91.     As a result of the fraudulently induced guilty plea and fraudulent representations to the Court, Richard Neumann was sentenced to four years in the Illinois Department of Corrections and fined $10,000.00.

92.     Richard Neumann's fraudulently induced guilty plea and subsequent fine, conviction and imprisonment resulted in violations of his Fifth and Eighth Amendment rights.

93.     The search was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Neumann.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Douglas Schaan**

94.     Plaintiff, Douglas Schaan, is a resident of California.

95.     On March 6, 2013, Douglas Schaan was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

96.     Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Brian Zebron arrived at the traffic stop and conducted a drug sniff of the car.

97.     After the drug sniff was completed, SAFE Officers Daniel Gillette, Edward Jauch, and Jeff Gaither, along with LaSalle Police Department Officer Zebron, conducted a search of the vehicle.

98.     SAFE seized $10,420.00 in U.S. currency and a 2006 Honda Ridgeline truck.

99.     This search violated Douglas Schaan's Fourth Amendment rights and was an illegal search.

100.    The seizure of the U.S. currency and Douglas Schaan's 2006 Honda Ridgeline was a violation of Douglas Schaan's Fourth and Fourteenth Amendment rights.

101.    The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Douglas Schaan.  The search and seizure was part of the Defendants' conspiracy

to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Scott Sheldon**

102. Plaintiff, Scott Sheldon, is a resident of Oregon.

103. On January 15, 2014, Scott Sheldon was driving eastbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

104. Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Brian Zebron arrived at the traffic stop and conducted a drug sniff of the car.

105. After the drug sniff was completed, SAFE Officers Daniel Gillette and Jeff Gaither conducted a search of the car.

106. SAFE seized $3,400.00 in U.S. currency and 2005 Nissan Altima.

107. This search violated Scott Sheldon's Fourth Amendment rights and was an illegal search.

108. The seizure of the U.S. currency was a violation of Scott Sheldon's Fourth and Fourteenth Amendment Rights.

109. Scott Sheldon plead guilty to drug charges for the drugs seized during this illegal stop when the LaSalle County States Attorney fraudulently represented to Scott Sheldon and the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the States Attorney would present during a trial.

110. As a result of the fraudulently induced guilty plea and fraudulent representations to the Court, Philip Dorsey was sentenced to four years in the Illinois Department of Corrections.

111.    Scott Sheldon's fraudulently induced guilty plea and subsequent conviction and imprisonment resulted in violations of his Fifth and Eighth Amendment rights.

112.    The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Scott Sheldon.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**William Whitlow**

113.    Plaintiff, William Whitlow is a resident of California.

114.    On October 23, 2013, William Whitlow was driving on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

115.    Immediately after being stopped for a supposed minor traffic violation, a Canine Drug sniffing dog arrived at the traffic stop and conducted a drug sniff of the car.

116.    After the drug sniff was completed, SAFE Officers conducted a search of the car.

117.    SAFE seized $31,000 in U.S. currency.

118.    This search violated William Whitlow's Fourth Amendment rights and was an illegal search.

119.    The seizure of the U.S. currency was a violation of William Whitlow's Fourth and Fourteenth Amendment rights.

120.    The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop William Whitlow.  The search and seizure was part of the Defendants' conspiracy

to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**<u>Wyatt Whitlow</u>**

121.     Plaintiff, Wyatt Whitlow, is a resident of California.

122.     On January 21, 2013, Wyatt Whitlow was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

123.     Immediately after being stopped for a supposed minor traffic violation, LaSalle Police Department Canine Officer Brian Zebron arrived at the traffic stop and conducted a drug sniff of the car.

124.     After the drug sniff was completed, SAFE Officers Daniel Gillette and Jeff Gaither conducted a search of the car.

125.     SAFE seized $98,800 in U.S. currency.

126.     This search violated Wyatt Whitlow's Fourth Amendment rights and was an illegal search.

127.     The seizure of the U.S. currency was a violation of Wyatt Whitlow's Fourth and Fourteenth Amendment rights.

128.     The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Wyatt Whitlow.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

**Adam Woodley**

129.    Plaintiff, Adam Woodley, is a resident of Pennsylvania.

130.    On December 8, 2011, Adam Woodley was driving eastbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE, an unlawful police force acting under the color of law.

131.    Immediately after being stopped for a supposed minor traffic violation, Spring Valley Police Department Canine Officer Timothy Green arrived at the traffic stop and conducted a drug sniff of the car.

132.    After the drug sniff was completed, SAFE Officers conducted a search of the car.

133.    This search violated Adam Woodley's Fourth and Fourteenth Amendment rights and was an illegal search.

134.    Adam Woodley plead guilty to drug charges for the drugs seized during this illegal stop when the LaSalle County State's Attorney fraudulently represented to Adam Woodley and the Thirteenth Judicial Circuit that they had legally seized evidence and testimony from the arresting officers that the State's Attorney would present during a trial.

135.    Adam Woodley's fraudulently induced guilty plea, subsequent fine of $5,000.00, conviction and imprisonment resulted in violations of his Fifth and Eighth Amendment rights.

136.    The search and seizure was conducted as part of the Defendants' unlawful violations of RICO by operating a corrupt unlawful vigilante police force that had no jurisdiction or right to stop Mr. Woodley.  The search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants.

137.    The Plaintiffs, as well as the Circuit Court for the Thirteenth Judicial Circuit for LaSalle County, did not know and could not have known that the Defendants were not acting under the color of law until the Illinois Appellate Court and Supreme Court held that Brian Towne, LaSalle County State's Attorney, and SAFE exceeded the scope of their office and lacked the authority to equip its own police force with squad cars and ticket books for the purpose of patrolling the interstate. *People of the State of Illinois v. Cara M. Ringland*, 2017 IL 119484, affirming the Appellate Court. *Ringland* further stated that the traffic stops and arrests were unlawful. *Ringland*, 33 N.E. 2d at 1062.

## PARTIES

### Defendants

### LaSalle County State's Attorney Felony Enforcement Unit

138.    LaSalle County State's Attorney Felony Enforcement Unit ("SAFE") is an unofficial, unlawful police department set up by the LaSalle County State's Attorney Office and the LaSalle County States Attorney, Brian Towne.

139.    The sole purpose of SAFE was to generate income through the Illinois Controlled Substance Act, 720 ILCS 570, The Cannabis Control Act, 720 ILCS 550, and the Drug Asset Forfeiture Procedure Act, 725 ILCS 150.

140.    Under the Drug Asset Forfeiture Procedure Act, the arresting law enforcement agency receives 65% of the value of the property or cash seized. The prosecuting State's Attorney's Office will receive 12.5% of the value of the seized property.

141.    SAFE was organized to generate a larger percentage of money through the Drug Asset Forfeiture Act.

142.    SAFE profiled out-of-state drivers by pulling over vehicles with non-Illinois license plates for minor traffic violations to provide justification for the traffic stop.

143.    The profiling of vehicles with out-of-state (non-Illinois) license plates interfered with interstate commerce.

144.    Once the vehicles were pulled over, a canine unit from one of the named Defendant Police Departments would arrive on scene and the canine would perform a free air sniff to provide justification to search the vehicle and the inhabitants of the vehicle.

145.    The Illinois Supreme Court in the case of *People of the State of Illinois v. Cara M. Ringland*, 2017 IL 119484, affirming the Appellate Court, held that the traffic stops and arrests made by SAFE were unlawful.

146.    The *Ringland* Court also stated that the Circuit Court made the following finding of fact: "They [SAFE] are actually going out and seeking complaints by making petty traffic stops and petty offenses." *Ringland* at 30. The Illinois Supreme Court also held that the conduct of SAFE fell outside the scope of duties of the State's Attorney Office. *Ringland* at 33.

147.    SAFE profited by the illegal corrupt stops on Interstate 80 through the forfeiture of money and property seized during the stops.

148.    Seized money paid for trips out-of-state to attend continuing education classes for the members of SAFE and to procure equipment for SAFE

149.    Prior to the decision in *Ringland*, the Circuit Court of the Thirteenth Judicial Circuit County of LaSalle County enforced the arrests made by SAFE.

150.    Neither the Plaintiffs nor the Circuit Court of the Thirteenth Judicial Circuit of LaSalle County knew or had reason to know that SAFE was not a legal law enforcement entity.

151.    The Statute of Limitations did not begin to run until the Plaintiffs knew or should have known that the SAFE stops were illegal.

**LaSalle County State's Attorney**

152.    The LaSalle County State's Attorney is a legal Illinois governmental agency of the State of Illinois.

153.    The LaSalle County State's Attorney directed and supervised the illegal activities of SAFE.

154.    The LaSalle County State's Attorney profited from the illegally seized funds.

**Brian Towne**

155.    Brian Towne was the elected State's Attorney for LaSalle County.

156.    As the elected State's Attorney for LaSalle County, he was an elected official and officer of the State of Illinois.

157.    Brian Towne managed, supervised, and directed the LaSalle County State's Attorney's Office and SAFE

158.    Briane Towne, the LaSalle County State's Attorney, formulated the idea of operating his own police department under his office as LaSalle County State's Attorney in order to generate income for the LaSalle County State's Attorney's Office.

159.    Brian Towne authorized the prosecution of the forfeiture cases in the Circuit Court of the Thirteenth Judicial Circuit, County of LaSalle.

160.    Brian Towne authorized the requests from the LaSalle County State's Attorney's Office to the Illinois State Police for 65% of the funds seized through the illegal activities of SAFE.

161.    Brian Towne authorized the expenditure of seized funds generated by SAFE.

162.    Brian Towne authorized the expenditure of seized funds for personal travel out of state for continuing education for himself and members of the SAFE unit and officers of the Police Departments providing canine support.

163.    Brian Towne authorized the expenditure of seized funds for local non-profit organizations that did not qualify to be recipients of seized funds pursuant to the Drug Asset Forfeiture Act.

164.    Upon information and belief, Brian Towne misrepresented to the Circuit Court of the Thirteenth Judicial Circuit County of LaSalle that SAFE was not the arresting agency during Court proceedings in which SAFE victims requested special prosecutors and/or to suppress evidence.

165.    Upon information and belief, Brian Towne represented to the Illinois State Police that SAFE was the arresting agency for the funds seized from SAFE victims.

166.    Upon information and belief, Brian Towne directed SAFE to target vehicles with out-of-state license plates because those victims of SAFE's illegal activity were less likely to oppose forfeiture proceedings.

167.    Upon Information and belief, SAFE provided Brian Towne with a vehicle for Brian Towne's use.

**Edward Jauch**

168.    Edward Jauch, was the SAFE supervisor/commander.  He directed and supervised the activities of the SAFE Officers and the Police Department Canine units.

169.    Upon information and belief, Edward Jauch identified himself as a law enforcement official in violation of 18 U.S.C. Section 242, acting under the color of law exceeding the bounds of his official lawful authority

170.    Upon information and belief, Edward Jauch told SAFE victims not to oppose the forfeiture proceedings or SAFE would press felony charges against them.

171.    Upon information and belief, Edward Jauch identified himself as an FBI agent to numerous SAFE victims during interrogations/interviews of the SAFE victims in violation of 18 U.S.C. 912.

172.    Upon information and belief, Edward Jauch transported illegally seized drugs and currency through interstate commerce from Illinois to Massachusetts.

173.    Upon Information and belief, Edward Jauch represented himself to various Massachusetts Police Departments as a lawful Illinois Police Officer.

174.    The illegal representations made by Edward Jauch to Massachusetts Police Departments was used by those Police Departments to obtain search warrants and arrest warrants for four different Massachusetts residents.

175.    Edward Jauch received compensation for himself from funds obtained through the illegal seizures made by SAFE.

**Spring Valley Police Department**

176.    The Spring Valley Police Department provided canine support for the illegal traffic stops made by SAFE.

177.    The Spring Valley Police Department provided office space, interview rooms, evidence storage, and lock up facilities for SAFE.

178.    The Spring Valley Police Department profited from the illegal activities of SAFE through receipt of funds approved by Brian Towne.

179.    The Spring Valley Police Department is not located in LaSalle County but is located in Bureau County.

180.    The Spring Valley Police Department aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing canine units to perform free air sniffs of vehicles stopped by SAFE.

**Spring Valley Police Chief Kevin Sangston**

181.    Spring Valley Police Chief Kevin Sangston managed, supervised, and directed the activities of the Spring Valley Police Department.

182.    Spring Valley Police Chief Kevin Sangston approved the use of canine units to provide free air sniffs for traffic stops made by SAFE

183.    Spring Valley Police Chief Kevin Sangston entered into an agreement with Brian Towne whereby the Spring Valley Police Department would work with SAFE in the interference of interstate commerce by providing canine units for SAFE traffic stops, and in return the City of Spring Valley would receive a funds from the seized funds obtained by SAFE.

**LaSalle Police Department**

184.    The LaSalle Police Department provided canine support for the illegal traffic stops made by SAFE.

185.    The LaSalle Police Department provided office space, interview rooms, evidence storage, and lock up facilities for SAFE.

186.    The LaSalle Police Department profited from the illegal activities of SAFE through receipt of funds approved by Brian Towne.

187.    The LaSalle Police Department aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing canine units to perform free air sniffs of vehicles stopped by SAFE.

**LaSalle Police Department Chief Robert Uranich**

188.     The City of LaSalle Police Chief, Robert Uranich, managed, supervised, and directed the activities of the LaSalle Police Department.

189.     The City of LaSalle Police Chief, Robert Uranich, approved the use of canine units to provide free air sniffs for traffic stops made by SAFE.

190.     The City of LaSalle Police Chief, Robert Uranich, entered into an agreement with Brian Towne wherebythe LaSalle Police Department would work with SAFE in the interference of interstate commerce by providing canine units for SAFE traffic stops, and in return, the City of LaSalle Police Department would receive funds from the seized funds obtained by SAFE.

**Ottawa Police Department**

191.     The Ottawa Police Department provided canine support for the illegal traffic stops made by SAFE.

192.     The Ottawa Police Department provided office space, interview rooms, evidence storage, and lock up facilities for SAFE.

193.     The Ottawa Police Department profited from the illegal activities of SAFE through receipt of funds approved by Brian Towne.

194.     The Ottawa Police Department aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing canine units to perform free air sniffs of vehicles stopped by SAFE.

**Ottawa Police Chief Brent Roalson**

195.     The City of Ottawa Police Chief, Brent Roalson, managed, supervised and directed the activities of the Ottawa Police Department.

196.    The City of Ottawa Police Chief, Brent Roalson, approved the use of canine units to provide free air sniffs for traffic stops made by SAFE.

197.    The City of Ottawa Police Chief, Brent Roalson, entered into an agreement with Brian Towne whereby the Ottawa Police Department would work with SAFE in the interference of interstate commerce by providing canine units for SAFE traffic stops, and in return, the City of Ottawa Police Department would receive funds from the seized funds obtained by SAFE.

**Peru Police Department**

198.    The City of Peru Police Department provided canine support for the illegal traffic stops made by SAFE.

199.    The City of Peru Police Department provided office space, interview rooms, evidence storage, and lock up facilities for SAFE.

200.    The City of Peru Police Department profited from the illegal activities of SAFE through receipt of funds approved by Brian Towne.

201    The City of Peru Police Department aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing canine units to perform free air sniffs of vehicles stopped by SAFE.

**Peru Police Chief Douglas Bernabei**

202.    The City of Peru Police Chief, Douglas Bernabei, managed, supervised and directed the activities of the City of Peru Police Department.

203.    The City of Peru Police Chief, Douglas Bernabei, approved the use of canine units to provide free air sniffs for traffic stops made by SAFE.

204.    The City of Peru Police Chief, Douglas Bernabei, entered into an agreement with Brian Towne whereby The City of Peru Police Department would work with SAFE in the

interference of interstate commerce by providing canine units for SAFE traffic stops, and in return, the City of Peru Police Department would receive funds from the seized funds obtained by SAFE.

**Daniel Gillette**

205.    Daniel Gillette was a member of SAFE.

206.    Daniel Gillette interfered with interstate commerce when he profiled vehicles with out-of-state (non-Illinois) license plates.

207.    Daniel Gillette pulled vehicles over with out-of-state license plates on Interstate 80 for petty traffic violations.

208.    Daniel Gillette directed driver of the vehicles he pulled over to accompany him back to the SAFE vehicle.

209.    Within minutes of pulling over a vehicle, a canine unit from one of the Defendant Police Departments would arrive on scene to conduct a free air sniff.

210.    Upon information and belief, Gillette performed a search of the vehicle regardless of whether or not the canine dog detected or was alerted to the odor of drugs within the stopped vehicle.

211.    Daniel Gillette received compensation from the illegally seized funds

212.    SAFE provided funds to pay for out-of-state travel and continuing education for Daniel Gillette

**Jeff Gaither**

213.    Jeff Gaither was a member of SAFE.

214.    Jeff Gaither interfered with interstate commerce when he profiled vehicles with out-of-state (non-Illinois) license plates.

215.    Jeff Gaither pulled over vehicles with out-of-state license plates on Interstate 80 for petty traffic violations.

216.    Jeff Gaither directed driver of the vehicles he pulled over to accompany him back to the SAFE vehicle.

217.    Within minutes of pulling over a vehicle, a canine unit from one of the Defendant Police Departments would arrive on scene to conduct a free air sniff

218.    Upon information and belief, Gaither performed a search of the vehicle regardless of whether or not the canine dog detected or was alerted to the odor of drugs within the stopped vehicle.

219.    Jeff Gaither received compensation from the illegally seized funds

220.    SAFE provided funds to pay for out-of-state travel and continuing education for Jeff Gaither

**Mark Hoster**

221.    Mark Hoster was a member of SAFE.

222.    Mark Hoster interfered with interstate commerce when he profiled vehicles with out-of-state (non-Illinois) license plates.

223.    Mark Hoster pulled vehicles over with out-of-state license plates on Interstate 80 for petty traffic violations.

224.    Mark Hoster directed driver of the vehicles he pulled over to accompany him back to the SAFE vehicle.

225.    Within minutes of pulling over a vehicle, a canine unit from one of the Defendant Police Departments would arrive on scene to conduct a free air sniff

226.    Upon information and belief, Hoster performed a search of the vehicle regardless of whether or not the canine dog detected or was alerted to the odor of drugs within the stopped vehicle.

227.    Mark Hoster received compensation from the illegally seized funds.

228.    SAFE provided funds to pay for out-of-state travel and continuing education for Mark Hoster.

**Mark Manicki**

229.    At all times relevant hereto, Mark Manicki was a Canine Police Officer with the City of LaSalle Police Department.

230.    Mark Manicki would arrive on the scene of SAFE traffic stops with his assigned canine shortly after SAFE pulled over a vehicle.

231.    Mark Manicki aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing his assigned canine to perform free air sniffs of vehicles stopped by SAFE.

232.    Upon information and belief, Mark Manicki would aid and abet SAFE by assisting in the illegal searches of vehicles stopped by SAFE.

233.    Upon information and belief, Mark Manicki would aid and abet SAFE by assisting in the transportation of SAFE victims and/or their vehicles to the Police Station from Interstate 80.

234.    Mark Manicki's actions helped secure a portion of the seized funds for the City of LaSalle Police Department.

**Derek Benning**

235.    At all times relevant hereto, Derek Benning was a Canine Police Officer with the City of Peru Police Department.

236.    Derek Benning would arrive on the scene of SAFE traffic stops with his assigned canine shortly after SAFE would pull over a vehicle

237.    Derek Benning aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing his assigned canine to perform free air sniffs of vehicles stopped by SAFE.

238.    Upon information and belief, Derek Benning would aid and abet SAFE by assisting in the illegal searches of vehicles stopped by SAFE.

239.    Upon information and belief, Derek Benning would aid and abet SAFE by assisting in the transportation of SAFE victims and/or their vehicles to the Police Station from Interstate 80.

240.    Derek Benning's actions helped secure a portion of the seized funds for the City of Peru Police Department

**Timothy Green**

241.    At all times relevant hereto, Timothy Green was a Canine Police Officer with the City of Spring Valley Police Department.

242.    Timothy Green would arrive on the scene of SAFE traffic stops with his assigned canine shortly after SAFE would pull over a vehicle.

243.    Timothy Green aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing his assigned canine to perform free air sniffs of vehicles stopped by SAFE.

244.    Upon information and belief, Timothy Green would aid and abet SAFE by assisting in the illegal searches of vehicles stopped by SAFE.

245.    Upon information and belief, Timothy Green would aid and abet SAFE by assisting in the transportation of SAFE victims and/or their vehicles to the Police Station from Interstate 80.

246.    Timothy Green's actions helped secure a portion of the seized funds for the City of Spring Valley Police Department

**Robert Nilles**

247.    At all times relevant hereto, Robert Nilles was a Canine Police Officer with the City of Ottawa Police Department.

248.    Robert Nilles would arrive on the scene of SAFE traffic stops with his assigned canine shortly after SAFE would pull over a vehicle.

249.    Robert Nilles aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing his assigned canine to perform free air sniffs of vehicles stopped by SAFE.

250.    Upon information and belief, Robert Nilles would aid and abet SAFE by assisting in the illegal searches of vehicles stopped by SAFE.

251.    Upon information and belief, Robert Nilles would aid and abet SAFE by assisting in the transportation of SAFE victims and/or their vehicles back to the Police Station from Interstate 80.

252.    Robert Nilles' actions helped secure a portion of the seized funds for the City of Ottawa Police Department.

**Matthew Heiden**

253.    At all times relevant hereto, Matthew Heiden was a Canine Police Officer with the City of Peru Police Department.

254.    Matthew Heiden would arrive on the scene of SAFE traffic stops with his assigned canine shortly after SAFE would pull over a vehicle.

255.    Matthew Heiden aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing his assigned canine to perform free air sniffs of vehicles stopped by SAFE.

256.    Upon information and belief, Matthew Heiden would aid and abet SAFE by assisting in the illegal searches of vehicles stopped by SAFE.

257.    Upon information and belief, Matthew Heiden would aid and abet SAFE by assisting in the transportation of SAFE victims and/or their vehicles back to the Police Station from Interstate 80.

258.    Matthew Heiden's actions helped secure a portion of the seized funds for the City of Peru Police Department

**Brian Zebron**

259.    At all times relevant hereto, Brian Zebron was a Canine Police Officer with the City of LaSalle Police Department.

260.    Brian Zebron would arrive on the scene of SAFE traffic stops with his assigned canine shortly after SAFE would pull over a vehicle.

261.    Brian Zebron aided and abetted the illegal activities of SAFE, providing an air of legitimacy to the traffic stops by providing his assigned canine to perform free air sniffs of vehicles stopped by SAFE.

262.    Upon information and belief, Brian Zebron would aid and abet SAFE by assisting in the illegal searches of vehicles stopped by SAFE.

263.    Upon information and belief, Brian Zebron would aid and abet SAFE by assisting in the transportation of SAFE victims and/or their vehicles back to the Police Station from Interstate 80.

264.    Brian Zebron's actions helped secure a portion of the seized funds for the City of LaSalle Police Department

**LaSalle County Board**

265.    The LaSalle County Board is a legal governmental agency controlling the budget and activities of LaSalle County governmental units.

266.    The LaSalle County Board approved the implementation of SAFE.

267.    The LaSalle County Board approved the budget of the LaSalle County SAFE Unit.

268.    The LaSalle County Board conspired with Brian Towne to organize and establish SAFE.

269.    Upon Information and belief, the LaSalle County Board approved expenditures of illegally seized funds obtained by SAFE.

**City of Spring Valley**

270.    The City of Spring Valley entered into an agreement with Brian Towne to organize and operate SAFE.

271.    The City of Spring Valley approved the use of Spring Valley facilities for SAFE.

272.    The City of Spring Valley aided and abetted with Brian Towne to conceal/hide the fact that SAFE was receiving seized funds as the arresting police agency by allowing SAFE

and LaSalle County States Attorney Brian Towne to deposit funds received from reimbursement from the illegally seized funds into a Spring Valley bank account.

273.    The City of Spring Valley aided and abetted with SAFE and the LaSalle County States Attorney, Brian Towne, by approving withdrawals from the City of Spring Valley bank accounts for use by SAFE and the LaSalle County States Attorney Brian Towne.

**Rebecca Hanson and Jeff Burke**

274.    Rebecca Hanson and Jeff Burke were members of the City of Spring Valley Government.

275.    Rebecca Hanson and Jeff Burke were the authorized signatories for City of Spring Valley checks drawn on the City of Spring Valley bank account.

276.    Rebecca Hanson and Jeff Burke aided and abetted SAFE when they authorized and approved the deposit of checks made payable to SAFE into the City of Spring Valley bank accounts.

277.    Rebecca Hanson and Jeff Burke aided and abetted SAFE and the LaSalle County State's Attorney Office and Brian Towne by signing checks issued to SAFE, SAFE Officers, Brian Towne and organizations designated by Brian Towne from the City of Spring Valley bank accounts.

**Illinois State's Attorney's Appellate Prosecutor**

278.    Upon information and belief, the Illinois State's Attorney's Appellate Prosecutor ("SAAP") supervises the activities of the various States Attorneys in Illinois.

279.    SAAP supervised the activities of the LaSalle County State's Attorney's office, Brian Towne, and SAFE.

280.    SAAP conspired with Brian Towne to organize, staff, and implement SAFE.

281.    SAAP entered into a Memorandum of Agreement with SAFE, the LaSalle County State's Attorney's Office and Brian Towne to organize and implement SAFE.

282.    Upon information and belief, SAAP assisted SAFE in funding SAFE payrolls through SAAP's portion of the illegally seized funds.

## COMMON ALLEGATIONS

283.    Defendants conspired with each other to organize, fund, implement, and conduct the activities of SAFE.  Each of the Defendants profited from the illegally seized funds that resulted from the illegal searches of the Plaintiffs' vehicles and persons.

284.    Each of the Defendants were members of the corrupt enterprise, and all of the Defendants combined were the corrupt enterprise.

285.    Brian Towne implemented and controlled the operations of SAFE and the distribution of funds obtained illegally through the seizures.  Brian Towne conspired with the Defendant Police Departments and Defendant Chiefs of Police for those Police Departments to have those departments provide office space, lockup facilities, and canine support.

286.    The Defendant Police Departments and Chiefs of Police for those Police Departments joined in the illegal enterprise and operation of SAFE in order to have their Departments receive additional funds through illegally obtained seized assets.

287.    The LaSalle County State's Attorney's Office, Brian Towne, Edward Jauch, the Defendant Police Departments, and the Chiefs of Police for those Police Departments provided the guidance, management, and resources for the Defendants to carry out the day to day activities of SAFE.

288.    Defendants, LaSalle County Board, City of Spring Valley, SAAP, Jeff Burke, and Rebecca Hanson were passive members of the corrupt organization, providing funding and

banking activities for the enterprise and profiting through the distribution of SAFE funds distributed by Brian Towne.

289.     SAFE Officers, Jauch, Gillette, Gaither, Hoster, and Canine Officers Zebron, Manicki, Benning, Green, Nilles, and Heiden conducted the day to day operations of pulling over vehicles on Interstate 80 and having the canines perform free air sniffs of those vehicles, and they profited through payment of continuing education classes, per diem, salaries, and other unknown expenses.

290.     Upon information and belief, on more than one occasion the canine performing the free air sniff did not alert to drugs in the car and the free air sniff was deemed a negative search by the canine officer.  Despite the negative result, SAFE Officers determined that their ability to sniff drugs was better than the trained canine and, therefore, they searched the cars even though the canine did not smell drugs in, around, or on the car.

291.     SAFE operated from 2011 through 2015, and on information and belief pulled over at least 918 vehicles on Interstate 80 in LaSalle County during this time period.  Of the 918 vehicles pulled over, less than one percent (only 6) of those vehicles had Illinois license plates.

292.     The actions of SAFE, pulling over 918 vehicles where 99.4 percent of the vehicles had out-of-state license plates, demonstrates that SAFE intentionally profiled out-of-state vehicles and interfered with interstate commerce.

293.     Of the 918 vehicles pulled over for minor traffic violations, none of those vehicles received a traffic citation other than a warning ticket for the minor traffic violations, and no traffic citations were ever prosecuted.

294.     Issuing 918 warning tickets and no citations demonstrates that the purpose of the traffic stops was to provide an opportunity to illegally search vehicles and justify seizing assets,

violating the Plaintiffs' Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the Constitution of the United States.

## **CLASS ACTION ALLEGATIONS**

295.     Plaintiffs bring this class action lawsuit on behalf of themselves and the proposed Classes of similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

296.     Plaintiffs seek certification of the following Class:

All persons in the United States with non-Illinois license plates who were stopped, searched, detained, had their property seized, and or were arrested by SAFE while they were lawfully driving on Interstate 80 in Illinois.

297.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims and because the predicate acts of the Defendants establish a pattern of racketeering that affected the class-wide members in a common scheme to defraud the class-wide members

298.     **Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that individual joinder of all Class members is impracticable. Upon information and belief, Class members number in the hundreds to thousands. The precise number or identification of members of the Class are currently unknown to Plaintiff but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

299.    **Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting individual members of the Class.  These common questions of law or fact include, but are not limited to, the following:

Whether Defendants violated the Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment rights of Class members by conducting illegal stops, unreasonable searches of persons and/or vehicles, and unreasonable seizures of persons and/or vehicles, arrests and prosecution of the individual class-wide members;

Whether Defendants' activities constituted a corrupt organization engaged in violations of Civil RICO;

Whether Defendants violated any other city. state, or federal laws in establishing the SAFE unit and authorizing or approving the SAFE unit's drug interdiction activities;

Whether LaSalle County has a duty to indemnify any of the other Defendants;

Whether Defendants were unjustly enriched by the conduct of the SAFE unit;

Whether Defendants engaged in a common course of conduct committing the predicate acts giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the Class members.  Similar or identical statutory or common law violations and injuries are involved.  Common questions of law and

fact predominate over any questions that affect the individual members of the Class;

Whether Defendants violated 18 U.S.C. 1964 and 1965, 28 U.S.C. 1331, 42 U.S.C. 1983, 18 U.S.C. 242 and were unjustly enriched as a result of the unlawful activity of the Defendants; and

Whether the Plaintiffs and the Class are entitled to injunctive relief.

300. **Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class members. Plaintiff and Class members sustained damages arising out of Defendants' wrongful course of conduct in violation of federal or state laws. Additionally, the damages of Plaintiff and each Class member were caused directly by Defendants' wrongful conduct. Further, the harms suffered by the named Plaintiffs are typical of the harms suffered by Class members.

301. **Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are an adequate representative of the Class and their interests do not conflict with the interests of the other Class members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex class action litigation. Plaintiff and their counsel fully intend to fairly and adequately protect the interests of the Class.

302. **Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this case, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense involved in individually litigating their claims against Defendants. Therefore, it would be impracticable for members of the Class to individually seek

redress for Defendants' wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

## RICO SECTION 1962(C)

303. Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

304. This Count is directed against all of the Defendants.

305. SAFE is an enterprise engaged in and whose activities affect interstate commerce. The Count I Defendants are employed by or associated with the SAFE enterprise.

306. The Count I Defendants agreed to and did conduct and participate in the conduct of SAFE enterprise affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs through illegal searches and seizures of Plaintiffs' property while Plaintiffs were traveling interstate on Interstate 80. The specifics of each Defendant's activities is identified above and restated and incorporated into paragraph 303.

307. Pursuant to and in furtherance of the fraudulent scheme, Defendants committed multiple related acts. These acts were performed when SAFE stopped a minimum of 918 vehicles on Interstate 80 and then performed illegal searches of those vehicles, seizing property from the Plaintiffs and fraudulently representing to the Circuit Court of the Thirteenth Judicial

Circuit of LaSalle County that there was sufficient evidence to prosecute the individuals pulled over by SAFE, resulting in fines and prison sentences for some of the Plaintiffs.

308.     The Acts identified in the above allegations constitute a pattern of racketeering activity pursuant to 18 U.S.C. 1961 (5).

309.     The Count I Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

310.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and all others similarly situated in the Class have been injured in their business and property.  The injuries of the named Plaintiffs are set forth above in the section entitled Parties.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count I Defendants as follows:

a)  For the return of the actual amount seized from each Plaintiff identified above;

b)  For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c)  For treble damages;

d)  For attorney's fees; and

e)  For any and all other damages this Court deems appropriate.

## COUNT II

## RICO SECTION 1962(A)

311.     Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

312.     This Count is directed against all of the Defendants.

313. The Illegally seized funds were invested in bank accounts with the City of Spring Valley and the LaSalle County States Attorney and/or the LaSalle County Board in accounts commonly referred to as Fund 25.

314. Each of the Defendants received either direct compensation or indirect compensation from the illegally seized funds. Indirect compensation was funding or support of organizations that a Defendant chose.

315. Each of the Defendants also violated the National Stolen Property Act in that they knowingly, willfully, and wantonly converted and seized funds through the fraudulent activities of SAFE.

316. The Racketeering Activity of SAFE and each of the Defendants in Count II constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

317. As a direct and proximate result of the Count II Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs and all others similarly situated in the Class have been injured in their business and property. The injuries of the named Plaintiffs are set forth above in the section entitled Parties.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count II Defendants as follows:

a) For the return of the actual amount seized from each Plaintiff identified above;

b) For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c) For treble damages;

d) For attorney's fees; and

e) For any and all other damages this Court deems appropriate.

## COUNT III

## RICO SECTION 1962(B)

318.     Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

319.     This Count is directed against all of the Defendants.

320.     SAFE is an enterprise engaged in and whose activities affect interstate commerce.

321.     The Count III Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Specifics of how each Defendant acquired and maintained interests in the SAFE enterprise and their pattern of racketeering are identified above in the section entitled Defendants and restated and incorporated into paragraph 318.

322.     The racketeering activity of SAFE and each of the Defendants in Count II constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

323.     The Count III Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

324.     As a direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs and all others similarly situated in the Class have been injured in their business and property.  The injuries of the named Plaintiffs are set forth above in the section entitled Parties.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count III Defendant(s) as follows:

a)  For the return of the actual amount seized from each Plaintiff identified above;

b)  For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c) For treble damages;

d) For attorney's fees; and

e) For any and all other damages this Court deems appropriate.

## COUNT IV

## RICO SECTION 1962 (D)

325.     Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 324 above as if they were fully stated herein.

326.     This Count is directed against all of the Defendants.

327.     As set forth above, the Count IV Defendants agreed and conspired to violate 18 U.S.C. §§ 1962(a) (b) and (c).

328.     The Count IV Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The Count IV Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

329.     As a direct and proximate result of the Count IV Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property.  The injuries of the named Plaintiffs

are set forth above in the section entitled Parties and restated and incorporated into paragraph 325.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count IV Defendant(s) as follows:

a)  For the return of the actual amount seized from each Plaintiff identified above;

b)  For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c)  For treble damages;

d)  For attorney's fees; and

e)  For any and all other damages this Court deems appropriate.

## COUNT V

## CIVIL RIGHTS

330.    That the Plaintiffs were at all time relevant to the allegations of this complaint citizens of the United States.

331.    Plaintiffs reallege and restate the allegations contained in paragraphs 1 to 302 above as if they were fully stated herein.

332.    This Count is directed against all of the Defendants.

333.    The Defendants operated and engaged in the illegal racketeering activities of SAFE through their conduct, management, control and investment of funds seized by SAFE. Defendants engaged in illegal traffic stops on Interstate 80 in LaSalle County, conducted illegal searches of the Plaintiff's vehicles and seized property of the Plaintiffs and, in some cases, coerced confessions through fraudulent representations to the Circuit Court of the Thirteenth Judicial Circuit in Illinois as identified above.

334.   As a result of these illegal stops, Plaintiffs were subject to, among other things, (a) being illegally stopped on Interstate 80 for petty traffic violations that were never prosecuted; (b) being forced to have a canine perform a free air sniff of their vehicles; (c) illegal searches of their vehicles; (d) being detained by the various Defendant Police Departments after SAFE Officers fraudulently placed them under arrest; (e) being placed in handcuffs; (f) being photographed; (g) press releases identifying their names, affecting their reputation in the community; and (h) being interrogated and/or questioned about their activities.

335.   These fraudulent stops and detentions amount to an arrest as defined by the Fourth Amendment and the case law of the United States Supreme Court, the Seventh Circuit and its District Courts, the Illinois Supreme Court and its State Courts.

336.   SAFE did not have the authority under any Statute and the traffic stops made by SAFE has been declared illegal by the Illinois Appellate Court and Illinois Supreme Court. *People of the State of Illinois v. Cara M. Ringland*, 2017 IL 119484, affirming the Appellate Court.

337.   Defendants did not have warrants, probable cause or any other legal justification to detain and arrest Plaintiffs as described above and restated and incorporated into paragraph 331.

338.   Detaining and arresting Plaintiffs as described above without any legal justification violated the Fourth Amendment rights as guaranteed by the Fourteenth Amendment.

339.   Defendants' fraudulent representations to the Thirteenth Judicial Circuit resulted in coerced confessions by the Plaintiffs as identified above, resulting in fines and/or prison sentences imposed by the Court.

340.     The fraudulently induced convictions violated the Plaintiffs' Fifth, Eighth and Fourteenth Amendment rights guaranteed under the Constitution of the United States.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count V Defendant(s) as follows:

a)  For the return of the actual amount seized from each Plaintiff identified above;

b)  For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c)  For treble damages;

d)  For attorney's fees; and

e)  For any and all other damages this Court deems appropriate.

## COUNT VI

## 1983 UNREASONABLE SEIZURE OF PROPERTY

341.     Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

342.     This Count is directed against all of the Defendants.

343.     As stated above, the Defendants did not have valid legal warrants to stop, search, and/or seize property of the Plaintiffs.

344.     Seizing the Plaintiffs' property without legal justification violated the Fourth Amendment rights of the Plaintiffs, as guaranteed by the Fourteenth Amendment.

345.     Defendants knew that the Plaintiffs' property was unreasonably seized.

346.     The actions of the Defendants alleged herein were the direct and proximate cause of the constitutional violations and the resulting injuries that Plaintiffs and all others similarly situated in the Class suffered.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count VI Defendant(s) as follows:

a) For the return of the actual amount seized from each Plaintiff identified above;

b) For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c) For treble damages;

d) For attorney's fees; and

e) For any and all other damages this Court deems appropriate.

## **COUNT VII**

## **1983 UNREASONABLE SEARCH OF THE PERSON AND THEIR VEHICLES**

347.     Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

348.     This Count is directed against all of the Defendants.

349.     Defendants did not have a warrant, consent, exigent circumstances, or any other legal justification to stop and search Plaintiffs.

350.     Conducting a search on Plaintiffs and Plaintiffs' vehicles without any legal justification violated their Fourth Amendment rights, as guaranteed by the Fourteenth Amendment.

351.     The actions of Defendants alleged herein were the direct and proximate cause of the constitutional violations and the resulting injuries that Plaintiffs sustained.

352.     Defendants knew that Plaintiffs were searched without lawful justification, had the reasonable opportunity to prevent the unreasonable search, yet failed to do so.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count I Defendant(s) as follows:

a) For the return of the actual amount seized from each Plaintiff identified above;

b) For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c) For treble damages;

d) For attorney's fees; and

e) For any and all other damages this Court deems appropriate.

## COUNT VIII

## CIVIL CONSPIRACY

353.    Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

354.    This Count is directed against all of the Defendants.

355.    Each of the Defendants entered into an agreement to operate control, invest, and manage the activities of SAFE.

356.    The Illinois Supreme Court has held that SAFE was an illegal operation without any statutory validity.  *People of the State of Illinois v. Cara M. Ringland*, 2017 IL 119484, affirming the Appellate Court.

357.    Each of the Plaintiffs and all others similarly situated in the Class was injured as identified above.

358.    The overt act of the unauthorized illegal traffic stops was done pursuant to and in furtherance of the common scheme to seize funds and obtain those seized funds for the personal and business needs of the Defendants.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count VIII Defendant(s) as follows:

a)  For the return of the actual amount seized from each Plaintiff identified above;

b)  For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c)  For treble damages;

d)  For attorney's fees; and

e)  For any and all other damages this Court deems appropriate.

## COUNT IX

## FRAUD

359.    Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

360.    This Count is directed against all of the Defendants.

361.    The Illinois Supreme Court has held that SAFE was an illegal operation without any statutory validity.  *People of the State of Illinois v. Cara M. Ringland*, 2017 IL 119484, affirming the Appellate Court.

362.    Any and all traffic stops made by SAFE were fraudulent, unfair, and deceptive as SAFE acted as if their activities were under the color of law when in fact they were not.

363.    Defendants intended to make Plaintiffs believe that they were being stopped by a legal law enforcement agency with jurisdiction and authority to conduct those stops.

364.    Defendants intended for the Circuit Court of the Thirteenth Judicial Circuit of LaSalle County, State of Illinois to believe that the allegations made by the LaSalle County

State's Attorney as to what evidence the LaSalle County State's Attorney would present at trial was valid when, in fact, it would all need to be suppressed as the traffic stops and resulting search and seizures violated the Fourth Amendment as guaranteed by the Fourteenth Amendment under the United States Constitution.

365.    That the Court and the Plaintiffs relied on the fraudulent representations made by the LaSalle County States Attorneys and the other Defendants when the Plaintiffs had their property seized and forfeited through court proceedings.

366.    That the Court and the Plaintiffs relied on the fraudulent representations made by the LaSalle County State's Attorney's Office and the other Defendants when the Plaintiffs were fraudulently induced to enter guilty pleas resulting in false imprisonment and fines.

367.    That the fraudulent stops and fraudulent representations made to the Plaintiffs and the Thirteenth Judicial Circuit of LaSalle County occurred in the standard course and conduct of the State's Attorney's Office and other Defendants.

368.    The unfair, deceptive acts and fraudulent representations made by the Defendants were material to the forfeiture proceedings, traffic stops, searches, seizures, and criminal convictions.

369.    The Plaintiffs and all others similarly situated in the Class suffered damages as identified above.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count IX Defendant(s) as follows:

a)   For the return of the actual amount seized from each Plaintiff identified above;

b)   For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c)   For treble damages;

d)  For attorney's fees; and

e)  For any and all other damages this Court deems appropriate.

## COUNT X

## CONVERSION

370.    Plaintiffs reallege and restate the allegations contained in paragraphs 1 through 302 above as if they were fully stated herein.

371.    This Count is directed against all of the Defendants.

372.    Through the fraudulent acts of the Defendants, the property of the Plaintiffs was wrongfully seized and converted from the possession of the Plaintiffs and all others similarly situated in the Class to the possession of the Defendants.

373.    The Defendants fraudulently entered court orders granting Defendants' requests to convert Plaintiffs' property to the State of Illinois an ultimately distributed to the Defendants under the Drug Asset Forfeiture Procedure Act 725 ILCS 150.

374.    Defendants maintained control over the property of the Plaintiffs.

WHEREFORE, Plaintiffs and all others similarly situated in the Class request that this Court enter judgment against the Count X Defendants as follows:

a)  For the return of the actual amount seized from each Plaintiff identified above;

b)  For the return of the amount of any and all fines imposed and paid by the Plaintiffs;

c)  For treble damages;

d)  For attorney's fees; and

e)  For any and all other damages this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Patrick Flanagan, one of the attorneys for the named
Plaintiffs and all others similarly situated in the Class

Daniel Compton # 06195038
COMPTON LAW GROUP
85 Market Street
Elgin, IL 60123
847 742 6100
dancom@comptonlawgroup.net
jpaxton@comptonlawgroup.net

Patrick Flanagan # 62577738
COMPTON LAW GROUP
85 Market Street
Elgin, IL 60123
847 742 6100
pflanagan@comptonlawgroup.net
jpaxton@comptonlawgroup.net