**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL APPEL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18-cv-2439 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LASALLE COUNTY STATE'S ATTORNEY FELONY ENFORCEMENT UNIT, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the motion to dismiss [80] filed by Defendants Edward Jauch, City of Spring Valley, Kevin Sangston, Rebecca Hanson, and Timothy Green; the motion to dismiss [82] filed by Defendants LaSalle County State's Attorney, LaSalle County State's Attorney Felony Enforcement Unit, LaSalle County Board, Jeff Gaither, Daniel Gillette, and Derek Benning; the motion to dismiss [84] filed by Defendants City of Peru, Matthew Heiden, and Douglas Bernabei; the motion to dismiss [85] filed by Defendant Brian Towne; the motion to dismiss [86] filed by Defendants City of Ottawa, Robert Nilles, Brent Roalson, Mark Hoster; and the motion to dismiss [89] filed by Defendants City of LaSalle, Mark Manicki, Robert Uranich, and Brian Zebron.  For the reasons set forth below, the motions to dismiss [80; 82; 84; 85; 86; 89] are granted.  Plaintiffs are given until October 2, 2019 to file a second amended complaint consistent with this opinion. Status hearing set for October 15, 2019 at 9:00 a.m.

I.      **Background**

According to Plaintiffs' operative complaint, the LaSalle County State's Attorney Felony Enforcement Unit ("SAFE") is an unofficial, unlawful police department set up by the LaSalle County State's Attorney's Office and the LaSalle County States Attorney, Brian Towne. [78, at ¶ 138.]  Plaintiffs allege that the sole purpose of SAFE was to generate income through the Illinois Controlled Substance Act (720 ILCS 570), The Cannabis Control Act (20 ILCS 550), and the Drug Asset Forfeiture Procedure Act (725 ILCS 150). [*Id*. at ¶ 139.]  Under the Drug Asset Forfeiture Procedure Act, the arresting law enforcement agency receives 65% of the value of the property or cash seized. [*Id*. at ¶ 140.]  The prosecuting State's Attorney's Office receives 12.5% of the value of the seized property. [*Id*.]

SAFE profiled out-of-state drivers by pulling over vehicles with non-Illinois license plates for minor traffic violations to provide justification for the traffic stop. [*Id*. at ¶ 142.]  Once the vehicles were pulled over, a canine unit from one of the named Defendant Police Departments would arrive on scene and the canine would perform a free air sniff to provide justification to search the vehicle and its inhabitants. [*Id*. at ¶ 144.]

Spring Valley Police Chief Kevin Sangston managed, supervised, and directed the activities of the Spring Valley Police Department. [*Id*. at ¶ 184.]  Chief Sangston approved the use of canine units to provide free air sniffs for traffic stops made by SAFE. [*Id*. at ¶ 185.]  Chief Sangston entered into an agreement with Towne whereby the Spring Valley Police Department would work with SAFE by providing canine units for SAFE traffic stops, and, in return, the City of Spring Valley would receive funds from the seized funds obtained by SAFE. [*Id*. at ¶ 186.]  Furthermore, according to the amended complaint, the City of Spring Valley entered into an agreement with Towne to organize and operate SAFE. [*Id*. at ¶ 189.]  The City of Spring Valley

concealed the fact that SAFE was receiving seized funds as the arresting police agency by allowing SAFE and LaSalle County States Attorney Towne to deposit funds received from reimbursement from the illegally seized funds into a Spring Valley bank account. [*Id*. at ¶ 190.] The City of Spring Valley approved withdrawals from the City of Spring Valley bank accounts for use by SAFE and LaSalle County States Attorney Towne. [*Id*. at ¶ 190.]

City of LaSalle Police Chief Robert Uranich managed, supervised, and directed the activities of the LaSalle Police Department. [*Id*. at ¶ 198.] Chief Uranich approved the use of canine units to provide free air sniffs for traffic stops made by SAFE. [*Id*. at ¶ 199.] Chief Uranich entered into an agreement with Towne whereby the LaSalle Police Department would work with SAFE by providing canine units for SAFE traffic stops, and in return, the City of LaSalle Police Department would receive funds from the seized funds obtained by SAFE. [*Id*. at ¶ 200.] According to Plaintiffs, Chief Uranich knew or should have known that the SAFE was not an official police agency and that any and all of the traffic stops performed by SAFE were without probable cause, without valid warrants, and lacked any official authority. [*Id*. at ¶ 201.] The LaSalle Police Department is a department within and under the control of the City of LaSalle. [*Id*. at ¶ 192.] The City of LaSalle controls the budget and staffing for the LaSalle Police Department. [*Id*. at ¶ 193.] The City of LaSalle, through the LaSalle Police Department, provided canine support for the illegal traffic stops made by SAFE. [*Id*. at ¶ 194.] The City of LaSalle, through the LaSalle Police Department, provided office space, interview rooms, evidence storage, and lock up facilities for SAFE. [*Id*. at ¶ 195.] The City of LaSalle and the LaSalle Police Department profited from the illegal activities of SAFE through receipt of funds approved by Towne. [*Id*. at ¶ 196.] Plaintiffs make similar allegations with respect to the City of Ottawa, the City of Peru, and their respective police chiefs.

Plaintiffs contend that each Defendant acted as a principal in the organization and aided and abetted the activities of SAFE "through: (a) actual participation with the interruption of interstate commerce; (b) conducting searches without probable cause or warrants; (c) seizing property of the Plaintiffs; (d) extortion committed against the Plaintiffs; (e) false imprisonment of the Plaintiffs; (f) investment of the proceeds of the seized funds; and (g) benefited from the income knowing that the income was derived through SAFE." [*Id*. at ¶ 298.]

Plaintiff Michael Appel is a resident of Pennsylvania. [*Id*. at ¶ 5.] On January 15, 2015, Mr. Appel was driving westbound on Interstate 80 in LaSalle County, Illinois when he was stopped by SAFE. [*Id*. at ¶ 6.] Immediately after being stopped for a supposed minor traffic violation, Ottawa Police Department Canine Officer Robert Nilles arrived at the traffic stop and conducted a drug sniff of the car. [*Id*. at ¶ 7.] After the drug sniff was completed, SAFE Officers Daniel Gillette and Jeff Gaither conducted a search of the car. [*Id*. at ¶ 8.] SAFE seized $51,400.00 in U.S. currency. [*Id*. at ¶ 9.] Plaintiffs contend that this search violated Mr. Appel's Fourth Amendment rights and was an illegal search. [*Id*. at ¶ 10.] Plaintiffs further contend that the seizure of currency was a violation of Mr. Appel's Fourth and Fourteenth Amendment rights and that the search and seizure was conducted as part of the Defendants' operation of an unlawful vigilante police force that had no jurisdiction or right to stop Mr. Appel. [*Id*. at ¶¶ 11-12.] According to Plaintiffs, the search and seizure was part of the Defendants' conspiracy to seize assets under the Illinois Asset Forfeiture Law and fund activities that benefitted the Defendants. [*Id*.] Plaintiffs all make similar allegations.

On June 3, 2015, the Illinois Appellate Court held that—by creating the SAFE unit—"the State's Attorney created yet another branch of law enforcement, the conduct of which falls well outside the duties contemplated" by Illinois law. *People v. Ringland*, 33 N.E.3d 1020, 1029 (Ill.

App. Ct. 2015). That decision was affirmed by the Illinois Supreme Court. *People v. Ringland*, 89 N.E.3d 735 (Ill. 2017). Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, Section 1983 claims, and various state-laws in connection with the searches and seizures conducted by SAFE and other Defendants.[1]

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all

---

[1] Plaintiffs bring a cause of action titled "Civil Rights Common Allegations" (Count V). In that Count, Plaintiffs allege that Defendants violated their Fifth, Eighth and Fourteenth Amendment rights guaranteed under the Constitution of the United States. [78, at ¶ 381.] It is unclear to the Court what type of claim Plaintiffs seek to bring in Count V. To the extent that Plaintiffs seek to bring claims under different legal theories, Rule 10(b) requires "distinct claims to be separated into counts." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004). Should Plaintiffs file a second amended complaint, Plaintiffs are directed to follow Rule 10(b)'s requirements.

of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III.  Discussion

### A.  Non-Suable Entities

Defendants LaSalle County Board, LaSalle County State's Attorney's Office and LaSalle County State's Attorney Felony Enforcement Unit (together, the "LaSalle Defendants") move for dismissal of Plaintiffs' claims against them because they are not suable entities.  Courts in this district have concluded that a County Board and a State's Attorney's Office are not suable entities because they do not "enjoy separate legal existence independent of the County."  *Reese v. Chicago Police Dept.*, 602 F. Supp. 441, 443 (N.D. Ill. 1984), citing *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979); see also, *Fabiszak v. Will County Bd. Of Com'rs,* 1994 WL 698509 *2 (N.D. Ill. 1994) ("In Illinois, a County Board of Commissioners is not separate from the county, rather, its powers are co-extensive with the county[.]").  The SAFE Unit was formed by the LaSalle County State's Attorney's Office and LaSalle County States Attorney, Brian Towne.  [78, at ¶ 138.]  Thus—according to the LaSalle Defendants—the SAFE Unit did not have legal existence independent of LaSalle County and it therefore also is not a suable entity.

Plaintiffs fail entirely to respond to any of these legal or factual assertions, which are supported by citation to relevant authorities.  "A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."  *Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) (collecting cases); see also *Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (quoting *Stransky*

*v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir.1995)) (internal quotation marks omitted); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir.1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so."). Accordingly, the Court dismisses the claims against the LaSalle County Board, the LaSalle County State's Attorney's Office and the SAFE Unit without leave to replead.

### B. Sovereign Immunity

Although there are no allegations against the LaSalle County State's Attorney in the amended complaint, it still is listed as a party to the suit and has not been voluntarily dismissed by Plaintiffs. The LaSalle County State's Attorney's Office moves to dismiss Plaintiffs' claims against it on sovereign immunity grounds. The Eleventh Amendment to our Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Eleventh Amendment issues arise whenever a private citizen files a federal lawsuit against a state, a state agency, or a state official—although the effect of the amendment differs depending on the category of defendant." *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992) (citation omitted). "Whether a particular official is the legal equivalent of the State itself is a question of that State's law, and the Illinois Supreme Court decided in 1990 that State's Attorneys are state officials." *Garcia v. City of Chicago*, Ill., 24 F.3d 966, 969 (7th Cir. 1994) (internal citations omitted).[2] Accordingly, the

---

[2] Because Plaintiffs allege that Defendant Towne was not acting in his official capacity, the Court does not dismiss Plaintiffs' claims against Defendant Towne on sovereign immunity grounds. *Cf. Garcia v. City of*

Court dismisses Plaintiffs' claims against the LaSalle County State's Attorney on sovereign immunity grounds without leave to replead.

### C. Absolute Immunity

Defendant Towne moves for dismissal of Plaintiffs' claims against him on absolute immunity grounds. To the extent that Plaintiffs are suing Defendant Towne "in his official capacity as a state officer, damages are barred by the Eleventh Amendment." *Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) (citing *Nat'l. Cas. Co. v. McFatridge,* 604 F.3d 335, 342 (7th Cir. 2010); *Garcia v. City of Chi.,* 24 F.3d 966, 969 (7th Cir. 1994)). To the extent that Plaintiffs are suing Defendant Towne in his individual capacity for conduct related to prosecutorial activity, "damages are barred by absolute prosecutorial immunity." *Id*. (citing *Fields v. Wharrie,* 672 F.3d 505, 516 (7th Cir. 2012); *Thomas v. City of Peoria,* 580 F.3d 633, 638-39 (7th Cir. 2009)). Although Plaintiffs fail to identify any reason for concluding that absolute immunity should not apply in this case, the Supreme Court has "made clear that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009). The Court is skeptical that Defendant Towne is entitled to absolute immunity for the alleged misconduct at issue in this case. However, because the Court is dismissing Plaintiffs' federal claims for the reasons discussed below, the Court defers ruling definitively on whether Defendant Towne is entitled to absolute immunity until the issue properly subjected to adversarial briefing.

---

*Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994) (applying sovereign immunity to official capacity claims against State's Attorney).

### D. *Rooker-Feldman* Doctrine

Defendants also contend that Plaintiffs' federal claims are barred by the *Rooker-Feldman* doctrine.[3] The *Rooker-Feldman* doctrine "prevents federal district and appellate courts from deciding cases by litigants complaining of injuries from state-court judgments rendered before the federal suit commenced and seeking federal review and reversal of those judgments." *Weinhaus v. Cohen*, 773 F. App'x 314, 316 (7th Cir. 2019) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Plaintiffs in this case—at least to some extent—appear to be complaining of injuries from state-court judgments rendered before this case commenced. Indeed, the primary relief sought by Plaintiffs makes clear that is the case. Specifically, Plaintiffs request the following relief: (1) the return of the actual amount seized, (2) the return of the amount of any and all fines imposed and paid by Plaintiffs, (3) treble damages, (4) attorney's fees, and (5) any and all other damages this Court deems appropriate. To the extent that Plaintiffs' claims seek review of the relevant state-court forfeiture proceedings, the Court concludes that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. *Warden v. Nw. Bank of Rockford*, 2003 WL 22872118, at *2 (N.D. Ill. Dec. 3, 2003) (holding claims were barred under the *Rooker-Feldman* doctrine where reviewing claims effectively would reopen "state court forfeiture proceeding"). Still, to the extent that the Court can construe Plaintiffs' claims in a manner that does not require the Court effectively to review the decision of the state-court civil forfeiture proceedings, the Court will do so.

---

[3] Although Defendants do not focus on the argument, the argument still was raised (albeit in a cursory manner) and supported by relevant authority. In any event, the Court may *sua sponte* consider the *Rooker-Feldman* doctrine. *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646 (7th Cir. 2011) ("The district court correctly considered the *Rooker–Feldman* doctrine *sua sponte*[.]" (citation omitted)).

E.    **Statute of Limitations**

Defendants collectively move to dismiss Plaintiffs' claims under Section 1983 and the Racketeer Influenced and Corrupt Organizations ("RICO") Act as time-barred. Dismissal based on a statute of limitations is an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Nevertheless, "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009); see also *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (explaining that dismissal is appropriate "where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations").

The parties agree that there is a two-year statute of limitations for claims brought under Section 1983. *Licari v. City of Chicago*, 298 F.3d 664, 667-68 (7th Cir. 2002) ("A two year statute of limitations applies to section 1983 claims in Illinois." (citing *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992))). The parties also agree that there is a four-year statute of limitations for RICO claims. *Cherry v. Duke Realty Investments, Inc.*, 611 F. App'x 362 (7th Cir. 2015) ("The statute of limitations on his RICO claim was four years[.]" (citing *Cancer Found.*, 559 F.3d at 674)). However, Plaintiffs invoke the doctrines of equitable tolling and equitable estoppel in an effort to save certain of their claims.

State-law equitable tolling principles apply to Plaintiffs' Section 1983 claims. *Fayoade v. Spratte*, 284 F. App'x 345, 347 (7th Cir. 2008). Under the Illinois doctrine of equitable tolling, a plaintiff may "'sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before.'" *Id*. (quoting *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006)). With respect to Plaintiffs' RICO claims, although the federal common-law doctrine

of equitable tolling is "broader," it "still requires that a plaintiff act with diligence." *Id*. (citing *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595-96 (7th Cir.2001)). Under both Illinois and federal law, "[e]quitable tolling typically applies in cases where the plaintiff, despite reasonable efforts, cannot discover information essential to determining that he has a claim." *Id*.

Plaintiffs contend that they did not have the information necessary to determine that they had claims until the Supreme Court of Illinois issued its decision in *People v. Ringland*, which held that SAFE lacked authority to conduct the traffic stops and searches at issue. That argument was considered and rejected in Judge St. Eve's well-reasoned decision in *Larson v. LaSalle Cty.*, 2018 WL 1156204, at *4 (N.D. Ill. Mar. 5, 2018). As noted by the court in *Larson*, whether the "alleged constitutional injuries are actionable does not depend on whether SAFE officers were patrolling I-80 legally under state law at the time." *Id*. at 5. "[T]he violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). The Court therefore rejects Plaintiffs' contention that information provided by the *Ringland* decision was necessary to determine that they had constitutional claims.

The Court reaches the same conclusion with respect to Plaintiffs' claims under the RICO Act. Plaintiffs fail entirely to explain how any information provided in the *Ringland* decision was necessary for them to determine that they had RICO claims against Defendants. In fact, Plaintiffs amended complaint and opposition brief make clear that their RICO claims are based on the same alleged misconduct as their constitutional claims. [See, *e.g.*, 78, at ¶ 338 ("The Count I Defendants agreed to and did conduct and participate in the conduct of SAFE enterprise affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs

through illegal searches and seizures when they did not have probable cause to conduct the traffic stops and searches and seizures of Plaintiffs' property while Plaintiffs were traveling interstate on Interstate 80.").]

To the extent that Plaintiffs contend that the *Ringland* decision constituted a change in law that affected their claims, the Seventh Circuit has "previously rejected the argument that a change in law alone warrants equitable tolling." *Fayoade v. Spratte*, 284 F. App'x 345, 347 (7th Cir. 2008) (citing *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007); see also *Franklin v. Summers*, 41 F.3d 1510 (7th Cir. 1994) ("Changes in the law do not revive expired claims.").

To the extent that Plaintiffs contend that they did not realize that the challenged conduct was unlawful until challenged in *Ringland*, the Seventh Circuit also has rejected the argument that a claim is tolled until the plaintiff becomes aware of its unlawful nature. *Chakonas v. City of Chicago*, 42 F.3d 1132, 1136 (7th Cir. 1994) ("A plaintiff who is aware of his injury is not allowed to wait until the time that he becomes aware of its unlawful nature." (citing *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994)); *Cancer Found.*, 559 F.3d at 674 ("A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." (addressing RICO claim)); see also *Rotella v. Wood*, 528 U.S. 549, 555-559 (2000) (rejecting a "pattern discovery rule" and concluding that the statute of limitations on RICO claims begins running even if the plaintiff has not yet "discovered the pattern of predicate acts"). Thus, Plaintiffs are not entitled to equitable tolling.

Plaintiffs also argue that their claims are timely under the doctrine of equitable estoppel. However, Plaintiffs fail entirely to address the applicable legal standard for invoking equitable estoppel. "It is not the obligation of this court to research and construct the legal arguments open

12

to the parties, especially when they are represented by counsel." *United States v. Kinzer*, 13 F. App'x 399, 402 (7th Cir. 2001) (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986)) (internal quotation marks omitted). In any event, the Court concludes that the doctrine of equitable estoppel does not save Plaintiffs' federal claims. "In contrast to equitable tolling, federal courts do not borrow [the] state equitable estoppel doctrine when they borrow a state statute of limitations; federal courts apply the federal doctrine of equitable estoppel." *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992); see also *Cook v. City of Chicago*, 2014 WL 4493813, at *3 (N.D. Ill. Sept. 9, 2014) ("Federal equitable estoppel law controls [Section 1983 claims] even though defendants rely on an Illinois statute of limitations." (citation omitted)). Thus, federal law on equitable estoppel applies to Plaintiffs' federal claims, including Plaintiffs' Section 1983 claims. Under federal law, "[t]he traditional elements of equitable estoppel are: '(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel.'" *Garlovsky v. United States*, 211 F. Supp. 3d 1084, 1090 (N.D. Ill. 2016) (quoting *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)).

"Equitable estoppel * * * 'comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.'" *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (quoting *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001)). These "active steps" may include, among other things, "hiding evidence." *Shanoff v. Illinois Dept. of Human Services*, 258 F.3d 696, 702 (7th Cir. 2001). "Equitable estoppel presupposes 'efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time.'" *Rosado*, 832 F.3d at 716 (citation omitted). According to Plaintiffs—because Towne

13

and the LaSalle County State's Attorney continued to argue in the Illinois Appellate Court and the Illinois Supreme Court that the traffic stops were constitutional and were valid, they now are equitably estopped from arguing that Plaintiffs should have been on notice. [91, at 9.] However, taking a legal position contrary to the interests of Plaintiffs cannot be the foundation for invoking equitable estoppel. See *Singletary v. Continental Ill. Nat'l Bank and Trust Co of Chi.*, 9 F.3d 1236, 1241 (7th Cir. 1993) ("It is not the denial of liability or a refusal to cooperate in making the plaintiff's case that extends the statute of limitations, but affirmative efforts to delay the plaintiff's bringing suit." (internal citations omitted)). Accordingly, equitable estoppel also does not save Plaintiffs' federal claims.

Finally, Plaintiffs argue that—to the extent that Plaintiffs seek to bring claims against Defendant Towne—the claims should be deemed timely under 735 ILCS 5/13-202.1(a), which "permits victims of Class 1 felonies to sue for damages at any time if the perpetrator is convicted." *Hampton v. Rita*, 545 F. App'x 533, 534 (7th Cir. 2013) (citing 735 ILCS 5/13-202.1). This argument fails in numerous respects. To begin, Defendant Towne was not even charged with any Class 1 felony. Although Plaintiffs contend that the LaSalle County State's Attorney could have brought such charges against Towne, Plaintiffs have not identified any basis for concluded that the statute extends to all cases in which Class 1 felony charges could have been brought. In fact, the plain language of the statute requires that there be a conviction of a Class 1 felony. 735 ILCS 5/13-202.1(a)(2). Regardless, the Seventh Circuit has concluded that 735 ILCS 5/13-202.1 does not supplant the generally applicable two-year statute of limitations period for Section 1983 claims. *Hampton*, 545 F. App'x at 535.

Finally, Plaintiff Kathleen Brand argues that her claims are timely under 735 ILCS 5/13-211, which tolls the statute of limitations for claims of minors. Defendants

14

concede that because of Kathleen Brand's status as a minor, her claims under § 1983 are timely by virtue of 735 ILCS 5/13-211. See *Wallace v. City of Chi.*, 440 F.3d 421, 425 (7th Cir. 2006). However, Defendants argue that Ms. Brand's RICO claims remain time-barred, as 735 ILCS 5/13-211 does not apply to such federal claims. [93, at 2-3.] Plaintiffs have conceded the argument by failing entirely to respond.

In sum, to the extent that Plaintiffs other than Ms. Brand bring Section 1983 claims based on conduct occurring more than two years before Plaintiffs filed suit, Plaintiffs' Section 1983 claims are dismissed with prejudice. To the extent that Plaintiffs' RICO claims are based on conduct occurring more than four years before Plaintiffs filed suit, Plaintiffs RICO claims are dismissed with prejudice.

### F.     Section 1983 Claims

Defendants also move for dismissal of Plaintiffs' Section 1983 claims for failure to state a claim. Section 1983 allows an individual to sue any person who, under the color of state law, violates that individual's constitutional rights. 42 U.S.C. § 1983. In order to state a claim under Section 1983, Plaintiffs must allege facts sufficient to establish (1) that "conduct complained of was committed by a person acting under color of state law," and (2) that such "conduct "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 900 (7th Cir. 2019) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds) (internal quotation marks omitted). Although Defendants do not appear to be disputing the first element—at least for the

purposes of the pending motions to dismiss—Defendants argue that Plaintiffs fail sufficiently to allege the second element.

Plaintiffs argue that the challenged searches and seizures violated their Fourth Amendment rights. However, that argument is premised on the assumption that the initial traffic stops were unconstitutional. Although Plaintiffs have shown that the traffic stops were improper under Illinois law, the violation of "a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (citation omitted). Plaintiffs do assert that the initial traffic stops were not supported by probable cause—which would be a basis for a Fourth Amendment claim—but Plaintiffs fail to identify any factual allegations supporting those assertions. Plaintiffs' conclusory allegations that "all traffic stops, searches, and seizures lacked probable cause and were not supported by warrant" [see, *e.g.*, 78 at P. 294] are insufficient to survive a motion to dismiss. *Glanz v. Illinois*, 2016 WL 2344587, at *3 (N.D. Ill. May 4, 2016). Plaintiffs therefore have not alleged sufficient facts to support a plausible claim that the initial traffic stops were unconstitutional. Thus, to the extent that Plaintiffs' Section 1983 claims are based on the initial traffic stops, the Court grants Defendants' motions to dismiss Plaintiffs' Section 1983 claims with leave to replead.

To the extent that Plaintiffs' Section 1983 claims are based on the use of dog sniffs during the traffic stops, Plaintiffs Section 1983 claims also fail. The Supreme Court has concluded that the use of a dog sniff on the exterior of a car lawfully seized for a traffic violation "does not rise to the level of a constitutionally cognizable infringement."[4] *Ill. v. Caballes*, 543 U.S. 405, 409

---

[4] The Court notes that a delay caused by the dog sniff "may impact the determination of whether a seizure is reasonable." *United States v. Taylor*, 596 F.3d 373, 377 (7th Cir. 2010). However, Plaintiffs do not identify any allegations suggesting that there were any such delays here.

(2005). Plaintiffs have alleged no more here. To the extent that Plaintiffs contend that the dog sniffs were improper because the traffic stops were merely a pretext, the Supreme Court has repeatedly rejected that argument. *United States v. Taylor*, 596 F.3d 373, 377 (7th Cir. 2010) ("[Defendant's] argument is that the traffic stop was a pretext for a drug investigation, and that the primary objective is relevant in determining the reasonableness of a search and seizure. That argument has been repeatedly rejected by the Supreme Court."). Plaintiffs fail to identify any purported Fourth Amendment violation that is not premised on their contention that the initial traffic stops were improper. Accordingly, the Court grants Defendants' motions to dismiss Plaintiffs' Section 1983 claims with leave to replead.

Finally, to the extent that Plaintiffs seek to bring Section 1983 claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), Plaintiffs' claims fail. "Under *Monell*, a local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional violation occurred as a result of an official policy, custom, or practice." *Clemons v. Dart*, 2016 WL 890697, at *9 (N.D. Ill. Mar. 9, 2016). Thus, *Monell* "requires a plaintiff suing a municipality or comparable entity to demonstrate that the entity's official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Defendants moved for dismissal of Plaintiffs' *Monell* claims against it for failure sufficiently to allege a policy, custom, or practice. Plaintiffs fail entirely to respond to the argument. In any event, the Court agrees that Plaintiffs have not alleged that a constitutional violation occurred as a result of an official policy, custom, or practice, as Plaintiffs do not even allege an underlying constitutional violation. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); see also *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that

there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights."). Thus, to the extent that Plaintiffs seek to bring claims under *Monell*, Plaintiffs' claims are dismissed with leave to replead.

### G.    RICO Claims

Defendants also move for dismissal of Plaintiffs' RICO claims, raising numerous arguments as to why such claims are substantively deficient. First, to the extent that Plaintiffs seek to bring claims against municipalities, Defendants contend that Plaintiffs' RICO claims fail because " a municipality cannot be held liable under RICO." *Curtis v. Wilks*, 704 F. Supp. 2d 771, 786 (N.D. Ill. 2010) (collecting cases); see also *Rogers v. City of New York*, 359 F. App'x 201 (2d Cir. 2009) ("[T]here is no municipal liability under RICO[.]"). Municipalities cannot be held liable under RICO because they are incapable of forming the requisite *mens rea*. *Call v. Watts*, 142 F.3d 432 (6th Cir. 1998) ("Counties are not persons under RICO because they lack 'the capability to form the *mens rea* requisite to the commission of the predicate acts.'" (quoting *Smallwood v. Jefferson Cnty. Government*, 743 F. Supp. 502, 504 (W.D. Ky. 1990)); see also *Massey v. City of Oklahoma City*, 643 F. Supp. 81, 85 (W.D. Okla. 1986) ("[T]he City itself is incapable of forming the *mens rea* or criminal intent necessary to perform an act of racketeering[.]"). Furthermore, RICO does not apply to municipalities because "RICO's mandatory treble damages provision is punitive and * * * Congress did not intend to impose punitive damages on innocent taxpayers." *Curtis*, 704 F. Supp. 2d at 786. Plaintiffs fail entirely to respond these arguments and therefore have waived any argument in response. *Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim.") (collecting cases). Thus, to the extent that Plaintiffs seek to bring

RICO claims against municipalities (*i.e.*, the City of Spring Valley, the City of Ottowa, the City of Peru, the City of LaSalle, and LaSalle County), Plaintiffs' RICO claims are dismissed.

Second, Plaintiffs fail sufficiently to allege a pattern of racketeering activity. "A RICO claim is a unique cause of action that does not concern all instances of wrongdoing, but focuses on the limited purpose of 'eradicating organized, long-term, habitual criminal activity.'" *Kaye v. D'Amato*, 357 F. App'x 706, 710 (7th Cir. 2009) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). "A RICO plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Id*. (citation omitted). "A 'pattern of racketeering activity' requires at least two predicate acts within a ten-year period." *Id*. at 710-11 (citing 18 U.S.C. § 1961(5)). "Establishing a pattern also requires a showing that 'the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Id*. (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Defendants argue that Plaintiffs' allegations relating to a pattern of racketeering activity fail on both fronts.

Plaintiffs assert that they sufficiently have alleged the requisite number of predicate acts by alleging that Defendants (1) violated the civil rights of Plaintiffs every time Defendants conducted a search, and (2) committed extortion under the Hobbs Act each and every time Defendants seized assets.[5] With respect to the first category, as discussed above, Plaintiffs have not alleged sufficient facts to establish that the initial traffic stops were unconstitutional or otherwise violated federal law. Furthermore, "violations of civil rights and constitutional law * * * are not predicate acts under RICO." *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990).

---

[5] Plaintiffs also assert that Defendants interfered with interstate commerce every time Defendants stopped a vehicle. However, Plaintiffs fail to explain how that alleged conduct fits within their RICO claims. And Because interference with interstate commerce is an element of a Hobbs Act claim—as discussed below—the Court addresses that argument in the discussion of the Hobbs Act below.

That leaves the question of whether Plaintiffs sufficiently allege that Defendants violated the Hobbs Act.[6]  Claims under the Hobbs Act have two essential elements: (1) interference with commerce, and (2) extortion.  *United States v. Schultz*, 2017 WL 2080348, at *3 (N.D. Ill. May 15, 2017) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)).  For the purposes of this opinion, the Court assumes that Plaintiffs sufficiently allege the first element—leaving only the extortion element.  Extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).  Plaintiffs assert that "[e]ach and every time the Defendants seized assets, they committed extortion under the Hobbs Act."  [91, at 13.]  However, Plaintiffs do not allege any seizure of assets beyond those that were subject to state-court forfeiture proceedings.  To the extent that Plaintiffs seek to challenge the seizure of assets pursuant to state-court forfeiture proceedings, such claims are barred by the *Rooker-Feldman* doctrine discussed above.  *Weinhaus*, 773 F. App'x at 316 (The *Rooker-Feldman* doctrine "prevents federal district and appellate courts from deciding cases by litigants complaining of injuries from state-court judgments rendered before the federal suit commenced and seeking federal review and reversal of those judgments." (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In any event, the Court concludes that such conduct cannot serve as the basis for establishing extortion under the Hobbs Act.  "At common law, extortion was a property offense committed by a public official who took any money or thing of value that was not due to him under

---

[6] Plaintiffs also assert that Defendants interfered with interstate commerce by means including "robbery, extortion, and engaging in monetary transactions derived from unlawful activity."  [91, at 10.]  Although Defendants argued that Plaintiffs fail to allege facts establishing that any Defendants committed robbery [81, at 8-9], Plaintiffs fail entirely to explain how their allegations establish that such predicate acts occurred.  Regardless, the Court concludes that Plaintiffs' have not sufficiently alleged that any Defendant committed robbery, which only occurs when "the use of force or threat of force causes the victim to part with possession or custody of property against his will."  *People v. Hay*, 362 Ill. App. 3d 459, 466 (Ill. App. Ct. 2005).

the pretense that he was entitled to such property by virtue of his office."[7] *Wilkie v. Robbins*, 551 U.S. 537, 564 (2007) (citation and internal quotation marks omitted). "Extortion by [a] public official was the rough equivalent of what we would now describe as 'taking a bribe.'" *Evans v. United States*, 504 U.S. 255, 260 (1992). While "public officials were not immune from charges of extortion at common law, the crime of extortion focused on the harm of public corruption, by the sale of public favors for private gain, not on the harm caused by overzealous efforts to obtain property on behalf of the Government." *Wilkie*, 551 U.S. at 564. Thus, in *Wilkie*, the Supreme Court concluded that "it is not reasonable to assume that the Hobbs Act (let alone RICO) was intended to expose all federal employees * * * to extortion charges whenever they stretch in trying to enforce Government property claims." *Wilkie v. Robbins*, 551 U.S. 537, 566 (2007). With respect to the challenged seizures, Plaintiffs allege no more than overzealous efforts to obtain property on behalf of the state.[8] And the Court sees no reason to reach a different conclusion with respect to state employees. Accordingly, the Court dismisses Plaintiffs' RICO claims with leave to replead.

## H.    Qualified Immunity

Finally, the individual Defendants argue that Plaintiffs' federal claims against them should be dismissed on qualified immunity grounds. "The qualified immunity doctrine provides

---

[7] Certain Defendants assert that establishing extortion under the Hobbs Act requires a "*quid pro quo*." Although the Supreme Court has required such a showing for challenging campaign contributions under the Hobbs Act, the Supreme Court "expressly limited its holding to campaign contributions." *Medley v. United States*, 1 F.3d 1244 (7th Cir. 1993) (discussing *McCormick v. United States*, 500 U.S. 257, 274 (1991)). Defendants have not cited any authority supporting the extension of that holding.

[8] For the most part, Plaintiffs allege that Defendants seized money on behalf of the state. For example, Plaintiffs allege that seized money paid for trips out of state to attend continuing education classes for the members of SAFE and to procure equipment for SAFE. [78, at ¶ 148.] However, with respect to the officers actually conducting the searches and seizures (*i.e.*, the officers Plaintiffs contend committed extortion), Plaintiffs do not sufficiently allege that they took money to benefit themselves personally.

defendants immunity from suit, not just a defense to liability." *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Though it is an affirmative defense for pleading purposes, the plaintiff carries the burden of showing that defendants are not immune." *Id*. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "To decide whether government officials are entitled to qualified immunity, courts ask two questions: first, whether the facts or allegations, taken in the light most favorable to plaintiffs, constitute a violation of a statutory or constitutional right, and second, whether that right was clearly established at the time of the alleged violation." *Dibble v. Quinn*, 793 F.3d 803, 807 (7th Cir. 2015).

"To be 'clearly established,' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Id*. (citing *Reichle*, 566 U.S. at 664). "Although 'clearly established' does not require a case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). "The right allegedly violated must be established 'not as a broad general proposition' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id*. (quoting *Reichle*, 566 U.S. at 665). Plaintiffs' response to Defendants' qualified immunity argument focuses only on Plaintiffs' Section 1983 claims. Plaintiffs argue that Defendants violated the Fourth Amendment by conducting "unauthorized traffic stops" that they "knew or should have known * * * were unauthorized, as they lacked any official jurisdiction, and that SAFE was not a valid Police Force." [91, at 14.] Even if Plaintiffs could establish a constitutional violation by alleging that Defendants acted beyond their authority

under state law—which they cannot for the reasons addressed above—the individual Defendants still would be entitled to qualified immunity on any Section 1983 claims based on that misconduct, as Plaintiffs have not shown that it was clearly established that Defendants' conduct was unauthorized. To the contrary, Plaintiffs themselves allege that "[n]either the Plaintiffs nor the Circuit Court of the Thirteenth Judicial Circuit of LaSalle County knew or had reason to know that SAFE was not a legal law enforcement entity." [78, at ¶ 150.] Given this allegation and the complex legal analysis in *Ringland*, the Court concludes that—to the extent that Plaintiffs' Section 1983 claims are based on SAFE being unauthorized—the individual Defendants would be entitled to qualified immunity on their Section 1983 claims and the Court therefore dismisses such claims against the individual Defendants without leave to replead. The Court does the same with respect to Plaintiffs' RICO claims, to the extent that such claims are dependent on the fact that the initial traffic stops were unauthorized under state law.

However, as noted above, the Court is giving Plaintiffs the opportunity to file a second amended complaint sufficiently alleging claims independent of whether the actions of SAFE were authorized, to the extent that such claims are not otherwise barred. Without knowing what additional facts Plaintiffs may allege, the Court is unable to determine whether the individual Defendants categorically are entitled to qualified immunity.

## I.    State Law Claims

Because the Court is dismissing Plaintiffs' federal claims, the Court also dismisses Plaintiffs' state law claims without prejudice. "The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'" *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); see also *Al's Service Center v. BP Products*

*North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court." (citations omitted)); *Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 558 (7th Cir. 2006) ("The district court properly dismissed the pendant state-law tort claims without prejudice because the federal claims were dismissed at screening.") (citing 28 U.S.C. § 1367(c); *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 564-65 (7th Cir. 2005)). If Plaintiffs file a second amended complaint sufficiently alleging federal claims, the Court then will consider any arguments in favor of dismissing Plaintiffs' state-law claims.

## IV. Conclusion

For the reasons set forth above, the motions to dismiss [80; 82; 84; 85; 86; 89] are granted. Plaintiffs are given until October 2, 2019 to file a second amended complaint consistent with this opinion. Status hearing set for October 15, 2019 at 9:00 a.m.

Date: September 4, 2019

_____
Robert M. Dow, Jr.
United States District Judge

24